[Cite as *In re A.L.*, 2024-Ohio-5103.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE  L.A.                                          :

                                                                    No. 114102

A Minor Child                                    :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:**  AFFIRMED
**RELEASED AND JOURNALIZED:**  October 24, 2024

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD22902458

---

### *Appearances:*

Margaret Keenan, *for appellant.*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Joseph C. Young, Assistant Prosecuting
Attorney, *for appellee.*

---

MICHELLE J. SHEEHAN, J.:

{¶ 1} L.A., born in 2011, was removed from his mother's care in 2018 and subsequently placed in the legal custody of his paternal aunt.  In 2022, he was removed from his aunt's care due to his behavioral issues.  The Cuyahoga County Division of Children and Family Services (hereafter "CCDCFS" or "agency") ultimately moved for permanent custody, and the trial court granted the motion.

Mother does not appeal from the trial court's judgment. L.A., however, appeals from the judgment, arguing that CCDCFS failed to establish reasonable efforts have been made to help mother achieve her case plan goals. L.A. also argues that CCDCFS failed to investigate the possibility of legal custody to a relative. Our review reflects that the juvenile court properly engaged in the two-prong analysis set forth in R.C. 2151.414 and that clear and convincing evidence supports the court's decision granting permanent custody of L.A. Accordingly, we affirm the trial court's decision.

**Procedural History**

{¶ 2} In 2018, L.A. and several siblings were removed from mother's care because of her inability to meet their basic needs and her mental health and substance abuse issues. Subsequently, in October 2019, he, along with his siblings, were placed in the legal custody of their paternal aunt, S.A.

{¶ 3} In March 2022, L.A. was removed from his aunt's care because she was unable to care for him due to his behavioral issues and the agency filed a complaint alleging that L.A. was dependent. He was placed in the emergency custody of the agency after a hearing and was later adjudicated as dependent and committed to the temporary custody of the agency. In February 2023, the agency filed a motion to modify to temporary custody to permanent custody. On June 5, 2024, the trial court held a hearing on the motion.

**Permanent Custody Hearing and Appeal**

{¶ 4} L.A.'s mother, father, and legal custodian (his paternal aunt S.A.) were represented by counsel at the permanent custody hearing. Mother, L.A.'s GAL,

and father's GAL were also present. The agency's social worker Amy Norris and L.A.'s GAL testified at the hearing.

{¶ 5} Norris testified that she was assigned to the case in August 2022. Mother's children were either placed in legal custody of a relative or permanent custody of the agency due to her inability to meet their basic needs and her mental health and substance abuse issues. L.A. had been in the legal custody of his paternal aunt but was removed from her home in March 2022 because she was unable to care for him due to his behaviors involving sexualized conduct toward the siblings and running away from her home. The agency became involved after his removal from his aunt's home.

{¶ 6} The agency developed a case plan to facilitate reunification with mother, father, or the paternal aunt. Mother was unable to provide housing or to meet L.A.'s basic needs. There was no bed for the child in her residence. There were also safety concerns in the home due to repairs being undertaken in the home. On one visit to mother's home, mother told Norris that there was no food in the house. Despite being provided with referrals, mother was unsuccessful in finding housing. When Norris went to visit her the week before the hearing, all of mother's belongings were on the porch and she reported that she was moving to Michigan.

{¶ 7} Mother did not abide by the court's order for drug testing. She failed to complete either a nail sample test or urine screen, despite numerous requests from Norris and being provided with bus tickets for the testing facilities. Because of a lack

of test results, the agency could not refer mother to substance-abuse services. Mother, however, engaged in mental-health services prescribed in her case plan.

{¶ 8} Mother visited with L.A. at the beginning, but the visits became inconsistent. The last visit occurred in October 2023. In the 12-month period preceding the June 5, 2024 hearing, mother only visited with L.A. once, although there was communication between them by text messages and Snapchat. In January 2024, mother told the agency she no longer wished to visit with L.A..

{¶ 9} Father was required to establish paternity, visit L.A., provide for his basic needs, and submit to drug testing. He was incarcerated at some point during the pendency of this case and failed to fulfill any of the requirements.

{¶ 10} The agency also had a case plan for L.A.'s aunt and legal custodian S.A., but L.A. refused to engage in family counseling or visitations with her. When asked about living with his aunt, L.A. complained that she "mistreated" him and he refused to return to the home. S.A. agreed with a grant of permanent custody to the agency.

{¶ 11} L.A. has been in a foster home since his removal from his aunt's home. He still struggles behaviorally. The foster mother has been working with him, but he "has his ups and downs." He is in counseling and also engages in a Kent State University program to help him with schoolwork and behavioral issues. Norris testified that he is likely to remain in the foster home should permanent custody be granted.

{¶ 12} Mother suggested two potential placements for L.A. One of them is a friend of hers, but the agency did not approve of her due to outstanding warrants against her. The other placement suggested by mother is another paternal aunt, but she did not respond to the voicemail left by Norris in February 2024 regarding a potential placement of L.A. until 1:13 a.m. on the day of the permanent-custody hearing.

{¶ 13} Based on her involvement with the family, Norris did not believe either parent could provide a safe, stable, and permanent home for L.A. and she believed a grant of permanent custody would be necessary.

{¶ 14} L.A.'s GAL related the child's wish to be reunited with mother. He, however, recommended permanent custody to CCDCFS because mother had not remedied the conditions causing the child's removal or shown that she is able to care for him. Counsel for L.A.'s aunt agreed with a grant of permanent custody to the agency on her behalf. Mother's counsel advocated for a denial of the agency's motion, arguing that the agency failed to substantially investigated relatives for alternative placements. After the hearing, the trial court granted permanent custody to CCDCFS.

{¶ 15} On appeal, L.A. presents the following two assignments of error for our review:

> I. The trial court erred when it found that an award of permanent custody was in the child's best interest when the child protection services agency cannot show that the mother has failed to make substantial progress toward case plan objectives.

II.     The trial court erred when it found that an award of permanent custody was in the child's best interest when the child protection services agency failed to investigate an opportunity for legal custody to a relative.

For ease of discussion, we address the assignments of error jointly.

**Standard of Review**

{¶ 16} We begin our analysis with the recognition that while a parent's right to raise a child is an essential and basic civil right, *In re Hayes*, 79 Ohio St.3d 46, 48 (1997), children have the right to "parenting from either natural or adoptive parents which provides support, care, discipline, protection and motivation." *In re Hitchcock*, 120 Ohio App.3d 88, 102 (8th Dist. 1996).

{¶ 17} Under Ohio's permanent custody statute, R.C. 2151.414, the juvenile court's judgment granting permanent custody must be supported by clear and convincing evidence. Clear and convincing evidence has been defined as "'that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *In re K.H.*, 2008-Ohio-4825, ¶ 42 (8th Dist.), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus. We will not reverse a juvenile court's termination of parental rights and award of permanent custody to an agency unless the judgment is not supported by clear and convincing evidence. *See, e.g., In re N.B.*, 2015-Ohio-314, ¶ 48 (8th Dist.), and *In re M.J.*, 2013-Ohio-5440, ¶ 24 (8th Dist.). L.A. argues

that the award of permanent custody was against the manifest weight of the evidence. When reviewing for manifest weight in permanent custody cases, "the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *In re Z.C.*, 2023-Ohio-4703, ¶ 14. When weighing the evidence, we must always be mindful of the presumption in favor of the finder of fact. *Id.*

**Two-Prong Analysis for Permanent Custody**

{¶ 18} R.C. 2151.414 sets forth a two-prong analysis to be applied by a juvenile court in adjudicating a motion for permanent custody. R.C. 2151.414(B). Under the statute, the juvenile court is authorized to grant permanent custody of a child to the agency if, after a hearing, the court determines, by clear and convincing evidence, that any of the five factors under R.C. 2151.414(B)(1)(a) to (e) exists and, furthermore, permanent custody is in the best interest of the child under the factors enumerated in R.C. 2151.414(D)(1).

{¶ 19} Under the first prong of the permanent-custody analysis, the juvenile court is to determine if any of the following factors exists: whether the child is abandoned (R.C. 2151.414(B)(1)(b)); whether the child is orphaned and there are no relatives of the child who are able to take permanent custody (R.C. 2151.414(B)(1)(c)); whether the child has been in the temporary custody of public children services agencies or private child placing agencies for 12 or more

months of a consecutive 22-month period (R.C. 2151.414(B)(1)(d)); whether another child of the parent has been adjudicated as abused, neglected, or dependent on three separate occasions (R.C. 2151.414(B)(1)(e)); or, when none of these factors apply, whether "the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents." (R.C. 2151.414(B)(1)(a)).

{¶ 20} If any of these five factors under R.C. 2151.414(B)(1) exists, the trial court proceeds to analyze the second prong — whether, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency. R.C. 2151.414(D)(1).

{¶ 21} The first prong of the statutory analysis focuses on the parent while the second prong focuses on the child. On appeal, L.A. claims in his assignments of error that the trial court erred in determining his best interest, but his argument concerns the adequacy of the agency's efforts in achieving reunification. For the sake of completeness, we analyze the trial court's decision under both the first and second prongs of the statutory permanent-custody analysis.

**First Prong: R.C. 2151.414(B)(1)(a)**

{¶ 22} In this case, the trial court found the presence of the R.C. 2151.414(B)(1)(a) factor — that L.A. cannot be placed with either parent within a reasonable time or should not be placed with either parent. For this finding, R.C. 2151.414(E) enumerates 15 factors for the court to consider. Pursuant to R.C. 2151.414(E), if the court determines, by clear and convincing evidence, that one

or more of the (E)(1)-(15) factors exist, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. *See e.g., In re I.R.*, 2021-Ohio-3103, ¶ 69 (8th Dist.) (based on its findings under R.C. 2151.414(E), the juvenile court was required to find that the child could not be placed with either of his parents within a reasonable time or should not be placed with either parent), citing *In re C.H.*, 2003-Ohio-6854, ¶ 58 (8th Dist.).

{¶ 23} In this case, the trial court found the presence of factors set forth in (E)(1), (E)(4), (E)(10), and (E)(11). Pertinent to this appeal, R.C. 2151.414(E) states, in relevant part:

> (E) In determining . . . whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence . . . that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
>
> (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
>
> . . .

(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child[.]

. . .

(10) The parent has abandoned the child.

. . .

(11) The parent has had parental rights involuntarily terminated with respect to a sibling of the child pursuant to this section or section 2151.353 or 2151.415 of the Revised Code, or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to those sections, and the parent has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child.

. . .

(16) Any other factor the court considers relevant.

{¶ 24} The trial court here found the presence of factors in (E)(1) (notwithstanding reasonable case planning and diligent efforts by the agency, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child's removal), (E)(4) (mother and father have demonstrated a lack of commitment toward the child), (E)(10) (father has not participated in case plan services or visitation and has abandoned the child), and (E)(11) (the mother has had parental rights terminated with respect to a sibling). The court also found an additional relevant factor not enumerated in the statute: the child's legal custodian does not wish the child to return to her care and was

unable to provide care and supervision necessary to safely maintain the child in her home.

{¶ 25} Our review indicates the trial court's findings under R.C. 2151.414(E) are supported by clear and convincing evidence in the record and, therefore, the trial court appropriately found that L.A. could not "be placed with either parent within a reasonable time or should not be placed with either parent." R.C. 2151.414(E). L.A. argues, however, that the agency has not established that it has made reasonable efforts to help mother achieving the objectives of her case plan.

{¶ 26} Regarding the agency's efforts, R.C. 2151.419 addresses the agency's efforts and requires the trial court to make a finding of whether an agency made reasonable efforts to prevent removal or to return the child to the home only for adjudicatory, emergency, detention, and temporary-disposition hearings, and dispositional hearings for abused, neglected, or dependent children, and, the trial need not make such an express finding when ruling on a motion for permanent custody. *In re Ky.D.*, 2024-Ohio-3198, ¶ 46-47 (8th Dist.), citing *In re A.P.*, 2016-Ohio-5849, ¶ 13 (8th Dist.), and *In re Baby Boy M.*, 2008-Ohio-5271 (8th Dist.). While the trial court is not required to make the specific finding, the agency nonetheless must demonstrate it has made reasonable efforts. *In re J.B.*, 2020-Ohio-3675, ¶ 20 (8th Dist.), citing *In re C.F.*, 2007-Ohio-1104, ¶ 29. This court has held that "[w]hen considering whether the agency made reasonable efforts to prevent the continued removal, the issue is not whether the agency could have done

more, but whether it did enough to satisfy the reasonableness standard under the statute." *Id.* at ¶ 21, citing *In re Davidson-Rush*, 2006-Ohio-4873, ¶ 50 (5th Dist.).

{¶ 27} The record here contains evidence supporting CCDCFS's reasonable efforts to reunite mother with L.A. Its case plan for mother consisted of housing, mental health, substance abuse, and visitation components. She, however, only engaged in the mental-health services. Despite persistent requests from the social worker, who also offered transportation assistance, mother refused to submit to drug testing. Mother was provided with referrals for housing and the social worker made several attempts to investigate her housing situation, but mother has decided to move out of town. Despite being provided with visitation opportunities, mother was inconsistent and eventually declined any further visitation. We note that the statute "does not require that an Agency walk a parent through every step of the plan; the parent bears some of the responsibility for accomplishing the objectives of the case plan." *In re Jo. S.*, 2011-Ohio-6017, ¶ 37 (3d Dist.). Mother's lack of motivation or interest in her case plan does not render CCDCFS's case planning efforts unreasonable.

{¶ 28} L.A. also argues CCDCFS failed to investigate a relative placement suggested by mother. The social worker's testimony reflects that the relative did not respond to her inquiry for a possible placement for four months until at 1:13 a.m. on the day of the hearing. Because of the last-minutes response, the agency could not have properly investigated the suitability of the relative placement. Furthermore, we observe that mother was represented by counsel and could have filed a motion

for legal custody to a relative willing to serve as L.A.'s legal custodian, but no such motion was ever filed.

{¶ 29} Because our review reflects clear and convincing evidence relating to the R.C. 2151.414(E) factors, the trial court properly found that L.A. cannot be placed with either parent within a reasonable time or should not be placed with either parent.

**Second Prong: Best Interest of the Child**

{¶ 30} Once the juvenile court determines that one of the five factors listed in R.C. 2151.414(B)(1) is present, the court proceeds to an analysis of the child's best interest. The court undertakes this analysis with the recognition that although parents have a constitutionally protected interest in raising their children, that interest is not absolute and is always subject to the ultimate welfare of the child. *In re B.L.*, 2005-Ohio-1151, ¶ 7 (10th Dist.); *In re N.M.*, 2018-Ohio-1100 (8th Dist.). In determining the best interest of the child, R.C. 2151.414(D) mandates that the juvenile court consider all relevant factors, including, but not limited to, the following:

> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services

agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 31} When analyzing the best interest of the child, "[t]here is not one element that is given greater weight than the others pursuant to the statute." *In re Schaefer*, 2006-Ohio-5513, ¶ 56. Rather, the statute requires the court to weigh all relevant factors and find the best option for the child. *Id*. at ¶ 64.

{¶ 32} Here, the trial court stated it found permanent custody to be in the child's best interest after its consideration of (a) the interaction and relationship with the child's parents, siblings, relatives, foster caregivers, and out-of-home providers; (b) the wishes of the child — the court acknowledged L.A. wishes to be placed with mother but noted that the GAL recommends permanent custody; (c) the child's custodial history; and (d) the child's need for a legally secure permanent placement. The evidence in the record supports the trial court's determination. L.A.'s mother made scant efforts to achieve her case plan objectives and expressed a lack of interest in further visitation with him; L.A. was once placed with a relative but was removed from the placement due to his behavioral issues; the relative agrees with permanent custody; availability of other relative placement has not been established; and his GAL recommends permanent custody.

{¶ 33} L.A. argues the court erred in finding permanent custody to be in his best interest because the agency failed to investigate the option of legal custody to a relative. The agency had placed L.A. with a paternal aunt but she no longer wished to care for him. Mother suggested another paternal aunt as a potential placement, but that individual did not respond to the agency's inquiry until the early morning hours of the day of the hearing. In any event, R.C. 2151.414 does not require the trial court to "find by clear and convincing evidence that no suitable relative was available for placement"; it "does not make the availability of a placement that would not require a termination of parental rights an all controlling factor"; and it "does not even require the court to weigh that factor more heavily than other factors" in its best-interest analysis. *Schaefer*, 2006-Ohio-5513, at ¶ 64. The trial court here properly considered the statutory factors in determining that an award of permanent custody is in the child's best interest, and the record before us supports its decision.

{¶ 34} In concluding that the trial court's judgment granting permanent custody was not against the manifest weight of the evidence, we are mindful that "[i]n proceedings involving the custody and welfare of children the power of the trial court to exercise discretion is peculiarly important. The knowledge obtained through contact with and observation of the parties and through independent investigation cannot be conveyed to a reviewing court by printed record." *In re V.M.*, 2018-Ohio-4974, ¶ 62 (4th Dist.), citing *Trickey v. Trickey*, 158 Ohio St. 9 (1952). "'The discretion that the juvenile court enjoys in determining whether an order of

permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned.'" *In re Ch. O.*, 2005-Ohio-1013, ¶ 29 (8th Dist.), quoting *In re Awkal*, 95 Ohio App.3d 309, 316 (8th Dist.).

{¶ 35} For all the foregoing reasons, we find no merit to L.A.'s first and second assignments of error, and therefore, we affirm the trial court's judgment granting permanent custody to CCDCFS.

{¶ 36} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHELLE J. SHEEHAN, JUDGE

EILEEN A. GALLAGHER, P.J., and
LISA B. FORBES, J., CONCUR