**[Cite as *In re G.J.*, 2025-Ohio-4854.]**

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| IN RE G.J., ET AL. | : | |
| | : | No. 114991 |
| Minor Children | : | |
| | : | |
| [Appeal by E.S., Father] | : | |

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** October 23, 2025

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD23904891 and AD23904892

*Appearances:*

Gregory T. Stralka, *for appellant.*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Joseph C. Young, Assistant Prosecuting
Attorney, *for appellee.*

MICHELLE J. SHEEHAN, P.J.:

{¶ 1} Appellant Father appeals a judgment of the Cuyahoga County Court of Common Pleas, Juvenile Division, granting permanent custody of his two minor children to the Cuyahoga County Division of Children and Family Services ("CCDCFS"). Father argues that the juvenile court's decision is against the manifest

weight of the evidence. Our review of the record reveals that the juvenile court properly applied the two-prong statutory analysis required under R.C. 2151.414 and that clear and convincing evidence supports its decision to grant permanent custody of the children to CCDCFS. Therefore, we affirm the juvenile court's decision.

## I. Procedural History and Facts[1]

{¶ 2} This appeal involves twin children born in 2021.[2] From birth until their removal from the home, the children solely resided with Mother. It is unclear from the record what contact, if any, Father had with the children during this time.

{¶ 3} On January 6, 2023, the children were removed from Mother's home and placed in the emergency predispositional temporary custody of CCDCFS. Their removal was precipitated by concerns arising from Mother's chronic substance abuse, mental-health issues, poor parenting judgment, and prior criminal convictions. At this time, the children were placed together with a CCDCFS foster family.

{¶ 4} The initial complaint was dismissed for failure to reach a resolution within the required statutory time frame. In April 2023, CCDCFS refiled its complaint alleging the children were neglected and requested temporary custody.

---

[1] Mother has not appealed the trial court's decision terminating her parental rights. Therefore, this opinion will only address parts of the record relevant to the disposition of Father's appeal.

[2] This appeal arises from two lower court cases, one for each child: AD23904891 and AD23904892. The records for each case are identical and will be discussed as one herein.

Regarding Father, the complaint alleged that "he does not support, visit, or communicate with the children."

{¶ 5} The children were adjudicated neglected in July 2023 and continued in temporary custody of CCDCFS. The family-case plan developed by CCDCFS required Father to participate in parenting classes to address the agency's nurturing and parenting concerns because "he had not been around the children since birth." The family-case plan further stated that Father "did not support or visit the children and had minimal communication with them." The family-case plan called for Father to visit his children once a week for two hours. In July 2023, the complaint was amended to require Father to obtain appropriate housing to provide for the basic needs of the children.

{¶ 6} On December 4, 2023, CCDCFS filed its motion to modify temporary custody to permanent custody citing both parents' failure to comply with case plan. Regarding Father, the affidavit filed in support of the motion stated that Father had only visited the children once since July 2023 and had failed to obtain "independent housing" to provide for the basic needs of the children. The December 2023 semi-annual-administrative-review report ("SAR") further noted that Father "has not addressed finding suitable and safe housing. Father has been inconsistent with attending parent visitation." The June and December 2024 SARs also noted that Father "has not addressed finding suitable and safe housing. Father has been sporadic with attending parent visitation."

**{¶ 7}** Father filed for legal custody of the children in June 2024. In March 2025, a hearing was held on CCDCFS's motion for permanent custody and Father's motion for legal custody. At the custody hearing, the court heard testimony from a CCDCFS family advocate, a CCDCFS case worker and the guardian ad litem ("GAL") assigned to this case. Father was present but did not testify.

**{¶ 8}** In general, the testimony demonstrated that CCDCFS required Father to satisfy the following conditions to demonstrate he was an appropriate guardian for the children: (1) visit his children; (2) obtain suitable housing; (3) provide proof of income; (4) attend parenting classes; and (5) submit for random drug and alcohol testing. The following testimony was provided regarding Father's efforts to satisfy these requirements.

*Visitation*

**{¶ 9}** The case worker, family advocate, and GAL all testified regarding Father's sporadic and/or inconsistent visitation with the children. The case worker specifically testified that Father would fail to show up for his weekly visit at least twice a month and on other occasions would arrive 20-30 minutes late for a two-hour visit. Father would state that he was sick or had vehicle issues. He did not attempt to make up visits. The GAL further testified that she was concerned because, at the time of the March 2025 hearing , Father had not visited the children since November 2024.

*Housing*

{¶ 10} Both the case worker and GAL testified regarding their concerns with Father's housing arrangements. The case worker testified that Father was currently living with his girlfriend of approximately six months and that she believed they had only been living together for four or five months. She further testified that Father was not on the lease for the apartment. The case worker agreed that the apartment was "appropriate" in terms of space, but she was concerned because of the length of the couple's relationship and what would happen to the children if Father and girlfriend broke up.

{¶ 11} The case worker also testified that, prior to his current living arrangement, Father had been living with either his grandmother or past girlfriends. She testified that Father indicated he could also live with his aunt and uncle if he obtained custody. The case worker visited their home and found it was appropriate.

{¶ 12} The GAL also visited the apartment where Father was living with his girlfriend. She testified that it was an appropriate space, but she was concerned because Father had not demonstrated that he had sufficient income to contribute to the rent on the apartment and because he was not on the lease.

*Income*

{¶ 13} Both the case worker and GAL testified that they were unable to verify Father's employment or income. The case worker testified that she received a letter allegedly from an employer from Father, but the letter was unsigned. She tried to reach the employer named in the letter by telephone but was never able to reach

him. She also "googled" the name of the company on the letter but nothing "came up." The case worker testified that Father always told her he was a self-employed contractor, but he never provided requested documentation such as a 1099 form or a Schedule C. The GAL testified that Father showed her amounts he allegedly earned in his "Cash App," but she could not verify these amounts or who they came from.

*Parenting Class*

{¶ 14} The case worker and family advocate confirmed that Father completed the required parenting class.

*Drug and Alcohol Testing*

{¶ 15} Both the case worker and family advocate confirmed that Father initially complied with random drug and alcohol testing, but in February 2025, he did not comply with a 24-hour alcohol testing requirement. Both individuals testified that there were no substance-abuse issues relating to Father.

*Other Relevant Testimony*

{¶ 16} The case worker testified that the children are placed in an agency foster home. They are together and have been with the same foster family since May 2023. She testified that the children are doing well in the home, basic needs are met, they are safe, thriving, and developing well. The children are in a "loving home." The GAL testified that the children are "doing extremely well in their placement. Everything is fine." The GAL recommended permanent custody to CCDCFS.

{¶ 17} Both the case worker and GAL noted that they were concerned because Father has another child in temporary custody of CCDCFS and that he is not involved with the case.

{¶ 18} On March 12, 2025, the juvenile court entered its decision granting permanent custody of the children to CCDCFS and denying Father's motion for legal custody. The juvenile court determined that the statutory requirements of R.C. 2151.414 were satisfied and it was in the best interest of the children to be placed in the permanent custody of CCDCFS.[3] This appeal follows.

## II. Law and Analysis

{¶ 19} The termination of parental rights is regarded as "'the family law equivalent of the death penalty in a criminal case.'" *In re J.B.*, 2013-Ohio-1704, ¶ 66 (8th Dist.), quoting *In re Hoffman*, 2002-Ohio-5368, ¶ 14. Indeed, "[t]he right to raise one's own child is "'an essential and basic civil right.'"" *In re B.G.M.*, 2025-Ohio-1465, ¶ 33 (8th Dist.), quoting *In re N.B.*, 2015-Ohio-314, ¶ 67 (8th Dist.), quoting *In re Hayes*, 79 Ohio St.3d 46, 48 (1997). "That right, however, is always subject to the ultimate welfare of the child." *Id.*, citing *In re B.C.*, 2014-Ohio-4558, ¶ 20, citing *In re Cunningham*, 59 Ohio St.2d 100, 106 (1979). "All children have "'the right, if possible, to parenting from either natural or adoptive parents which

---

[3] It should be noted that the juvenile court's judgment entry contains two errors demonstrated by the record in this case. First, the children were removed from the custody of Mother on January 6, 2023, and not January 1, 2023, as identified by the juvenile court's order. And second, CCDCFS's motion to modify temporary custody to permanent custody was filed on December 4, 2023, and not December 4, 2024, as also indicated in the juvenile court's order.

provides support, care, discipline, protection and motivation.""" *In re L.H.*, 2024-Ohio-2271, ¶ 24 (8th Dist.), quoting *In re J.B.* at ¶ 66, quoting *In re Hitchcock*, 120 Ohio App.3d 88, 102 (8th Dist. 1996). "Where parental rights are terminated, the goal is to create 'a more stable life' for dependent children and to 'facilitate adoption to foster permanency for children.'" *Id.*, quoting *In re N.B.* at ¶ 67, citing *In re Howard*, 1986 Ohio App. LEXIS 7860, *5 (5th Dist. Aug. 1, 1986).

**A. Standard of Review**

{¶ 20} The standard of review in permanent custody cases was set forth by the Ohio Supreme Court in *In re Z.C.,* 2023-Ohio-4703, ¶ 11. Specifically, the *Z.C.* Court "determined that the sufficiency-of-the-evidence and/or manifest-weight-of-the-evidence standards of review are the proper appellate standards of review of a juvenile court's permanent-custody determination, as appropriate depending on the nature of the arguments that are presented by the parties." *Id.* In this case, Father's sole assignment of error challenges the juvenile court's permanent-custody determination on manifest-weight grounds. Thus, we will limit our discussion to that alleged error.

{¶ 21} The appellate standard of review regarding manifest-weight grounds has been often described as follows:

> When reviewing for manifest weight, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. [*Eastley v. Volkman*, 2012-Ohio-2179] at ¶ 20. "In weighing the evidence, the court of appeals must always be mindful of

the presumption in favor of the finder of fact." *Id.* at ¶ 21. "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). "'If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.'" *Id.* at fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 603, at 191-192 (1978).

*In re Z.C.* at ¶ 14; *accord In re A.M.*, 2025-Ohio-1741, ¶ 28 (8th Dist.); *In re L.H.* at ¶ 28. Consistent with these principles, "'the juvenile court's decision to grant permanent custody will not be reversed as being against the manifest weight of the evidence "if the record contains some competent, credible evidence from which the court could have found that the essential statutory elements for permanent custody had been established by clear and convincing evidence."'" *In re U.B.*, 2025-Ohio-1265, ¶ 24 (8th Dist.), quoting *In re A.S.*, 2021-Ohio-3829, ¶ 39 (8th Dist.), quoting *In re A.P.*, 2016-Ohio-5849, ¶ 16 (8th Dist.).

### B. Permanent Custody Under R.C. 2151.414

{¶ 22} R.C. 2151.414 governs permanent-custody determinations in Ohio and sets forth a two-prong analysis. Under the statute, a juvenile court is authorized to grant permanent custody when it determines (1) that any one of the five factors identified in R.C. 2151.414(B)(1) exists; and (2) permanent custody is in the best interest of the child under the factors enumerated in R.C. 2151.414(D)(1). Additionally, any judgment granting permanent custody must be supported by clear

and convincing evidence. R.C. 2151.414(B)(1). Clear and convincing evidence is "defined as "'that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'"" *In re L.A.*, 2024-Ohio-5103, ¶ 17 (8th Dist.), quoting *In re K.H.*, 2008-Ohio-4825, ¶ 42, quoting *Cross v. Ledford,* 161 Ohio St. 469 (1954), paragraph three of the syllabus.

### 1. Prong One – R.C. 2151.414(B)(1)

{¶ 23} Under the first prong of R.C. 2151.414(B), the juvenile court must determine whether any one of the following factors apply: (a) the child cannot be placed with either parent within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned, and there are no relatives of the child who are able to take permanent custody; (d) the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for 12 or more months of a consecutive 22-month period; or (e) the child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state. *See generally* R.C. 2151.414(B)(1)(a)-(e). In this case, the juvenile court determined that factors (a) and (d) were satisfied.

{¶ 24} With regard to R.C. 2151.414(B)(1)(a), the juvenile court found by clear and convincing evidence that the children could not be placed with either of their parents within a reasonable time or should not be placed with the child's parents under R.C. 2151.414(B)(1)(a). When assessing this factor, a juvenile court must consider whether any one of the 16 factors outlined in R.C. 2151.414(E) were satisfied. *See generally In re A.V.*, 2014-Ohio-5348, ¶ 58 (8th Dist.); In *re R.M.*, 2012-Ohio-4290, ¶ 14 (8th Dist.); *In re B.P.*, 2019-Ohio-2919, ¶ 13 (8th Dist.). Further, a juvenile court is only required to find that one of these factors is met to properly find that a child cannot or should not be placed with a parent. *In re Ca.T.*, 2020-Ohio-579, ¶ 27 (8th Dist.), citing *In re V.C.*, 2015-Ohio-4991, ¶ 42 (8th Dist.).

{¶ 25} In this case, the juvenile court determined that R.C. 2151.414(E)(1), (3), (4), (14), and (16) were satisfied and supported a finding that the children could not be placed with either parent within a reasonable time or should not be placed with a parent. The relevant sections of R.C. 2151.414(E) are

> (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
>
> . . .

(3) The parent committed any abuse as described in section 2151.031 of the Revised Code against the child, caused the child to suffer any neglect as described in section 2151.03 of the Revised Code, or allowed the child to suffer any neglect as described in section 2151.03 of the Revised Code between the date that the original complaint alleging abuse or neglect was filed and the date of the filing of the motion for permanent custody;

(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;

. . .

(14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.

. . .

(16) Any other factor the court considers relevant.

{¶ 26} The juvenile court was only required to find that one of these factors existed in order to satisfy prong one of R.C. 2151.414(B). The record, however, contains competent, credible evidence demonstrating that each of these factors were satisfied by clear and convincing evidence. The testimony given at the hearing shows that Father has failed to visit his children for multiple months at a time despite being required to attend weekly visits. Father's visits were at best described as sporadic, and he made no effort to make up any missed visits. This testimony coupled with the SAR establishes Father's inconsistent and sporadic visitation with his children and provides clear and convincing evidence to support the trial court's

findings of neglect under R.C. 2151.414(E)(3). This evidence also supports a finding of lack of commitment under R.C. 2151.414(E)(4).

{¶ 27} Also, the court's determination that Father failed to obtain suitable housing is supported by competent, credible evidence from the record and provides clear and convincing evidence to support the trial court's finding under R.C. 2151.414(E)(14). The case worker and GAL each testified regarding their concerns with Father's past, current, and possible future living arrangements as well as their concerns regarding Father's ability to provide for the basic needs of the children evidenced by his failure to verify his employment and income. This evidence provides clear and convincing evidence of Father's lack of commitment and unwillingness to provide for the basic needs of his children under R.C. 2151.414(E)(4) or (14).

{¶ 28} Father does not dispute these facts. Rather, Father argues that his lack of visitation with his children does not rise to the level necessary to deprive him of custody. Father argues that this court should apply the standard for "abandoned" set forth under R.C. 3127.01(B)(1) of the Uniform Child Custody Jurisdiction Enforcement Act as to whether a parent has neglected a child by not visiting under R.C. 2151.414. Under this statute, abandonment of a child is established after a failure to visit a child for 90 days. On its face, this statute addresses interstate recognition and enforcement of child custody orders that have no application to the case at hand.

{¶ 29} Father also does not dispute the facts relating to his housing arrangements. Rather, he contends that all he is required to do is show that he has somewhere to live with his children. Indeed, Father asserts that he always has access to housing somewhere. However, the question before the juvenile court was not "did Father have housing" but rather it was "did Father have suitable housing." The testimony of the case worker and GAL discussed above is clear and convincing evidence to support the trial court's findings that Father did not have suitable housing for the children and was unwilling to provide for their basic needs under R.C. 2151.414(E)(14).

{¶ 30} Based on these facts alone, there is clear and convincing evidence for the juvenile court to conclude that the children could not be placed with their parents within a reasonable time or should not be placed with a parent. Accordingly, prong one of R.C. 2151.414 is satisfied.

## 2. Prong Two – Best Interest of the Child

{¶ 31} If prong one is satisfied, the juvenile court must then decide if permanent custody is in the best interest of the child under R.C. 2151.414(D)(1). On appeal, Father has made no express argument challenging the juvenile court's findings as they relate to its determination that granting permanent custody to CCDCFS was in the best interest of the children. Nevertheless, we will address this requirement.

{¶ 32} In determining the best interest of the child under R.C. 2151.414(D)(1), the juvenile court must consider all relevant factors, including

but not limited to (a) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents, and out-of-home providers, and any other person who may significantly affect the child; (b) the wishes of the child as expressed directly by the child or through the child's guardian ad litem; (c) the custodial history of the child; (d) the child's need for a legally secure placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (e) whether any factors in R.C. 2151.414(E)(7) through (11) are applicable. Although a juvenile court is required to consider each of the R.C. 2151.414(D)(1) factors in making its permanent-custody determination, "R.C. 2151.414(D)(1) does not require a juvenile court to expressly discuss each of the best-interest factors in R.C. 2151.414(D)(1)(a) through (e)." *In re A.M.*, 2020-Ohio-5102, ¶ 31. "Consideration is all the statute requires." *Id.* In analyzing the best-interest factors listed in R.C. 2151.414(D)(1)(a), "there is not one element that is given greater weight than the others pursuant to the statute." *In re Schaefer*, 2006-Ohio-5513, ¶ 56. Moreover, only one factor needs to be resolved in favor of permanent custody in order to find that permanent custody is in the child's best interest. *In re S.C.*, 2015-Ohio-2410, ¶ 30 (8th Dist.).

{¶ 33} Based on the record below, we find that the juvenile court properly concluded that permanent custody with CCDCFS was in the children's best interest. The juvenile court decision expressly states that it considered all the relevant factors under R.C. 2151.414(D)(1). Further, examining the interactions and relationships between the children and Father and the children and their foster family reveals

competent, credible evidence supporting that permanent custody is in the best interest of the children. As set forth above, the record reveals that Father has had inconsistent contact with the children and no visitation since November 2024. In light of the fact that the children have never lived with Father and his repeated failure to visit, support, and communicate with his children supports a conclusion that permanent custody with CCDCFS is in the best interest of the children. Additionally, regarding the children's relationship with their foster family, the GAL and case worker both testified that the children are doing well and thriving in their foster home. The GAL recommended permanent custody with CCDCFS as well. Thus, the children remaining with this foster family is in the best interest of the children. Prong two of R.C. 2151.414 has been satisfied by clear and convincing evidence and permanent custody to CCDCFS is in the best interest of the children.

{¶ 34} "In concluding that the trial court's judgment granting permanent custody was not against the manifest weight of the evidence, we are mindful that '[i]n proceedings involving the custody and welfare of children the power of the trial court to exercise discretion is peculiarly important. The knowledge obtained through contact with and observation of the parties and through independent investigation cannot be conveyed to a reviewing court by printed record.'" *In re L.A.*, 2024-Ohio-5103, at ¶ 34 (8th Dist.), quoting *In re V.M.*, 2018-Ohio-4974, ¶ 62 (4th Dist.), citing *Trickey v. Trickey*, 158 Ohio St. 9 (1952). "'"The discretion that the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature

of the proceeding and the impact the court's determination will have on the lives of the parties concerned.'"" *Id.*, quoting *In re Ch. O.*, 2005-Ohio-1013, ¶ 29 (8th Dist.), quoting *In re Awkal*, 95 Ohio App.3d 309, 316 (8th Dist. 1994).

{¶ 35} Father's sole assignment of error is overruled. The judgment of the juvenile court granting permanent custody to CCDCFS is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHELLE J. SHEEHAN, PRESIDING JUDGE

LISA B. FORBES, J., and
EILEEN T. GALLAGHER, J., CONCUR