[Cite as *In re C.H.*, 2025-Ohio-5351.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE C.H., JR.     :

A Minor Child     :  No. 115187

          :

[Appeal by C.H., Father]  :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** November 26, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD22906112

---

### *Appearances:*

Edward F. Borkowski, Jr., *for appellant*.

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Kelly Wojtila, Assistant Prosecuting Attorney, *for appellee*.

---

WILLIAM A. KLATT, J.:

{¶ 1} Appellant-father C.H. ("Father") appeals the juvenile court's decision terminating his parental rights and awarding permanent custody of his child, C.H., Jr. (d.o.b. 1/15/2019) ("C.H." or "the child") to the Cuyahoga County Division of Children and Family Services ("CCDCFS" or "the agency"). For the following reasons, we affirm.

## I. Factual and Procedural History

{¶ 2} This case arises from a June 17, 2022 complaint for neglect, dependency, and temporary custody filed by the agency.[1] The complaint alleged that both Mother and Father had substance-abuse issues, that they lack stable housing to provide for the child's basic needs, and that "the child was previously adjudicated neglected and dependent due, in part, to Mother and Father's substance abuse, and the child was previously committed to the temporary custody of CCDCFS prior to being reunited with Mother and Father in May 2020." The complaint also alleged that Father has another child who was previously adjudicated neglected and dependent partly because of Father's substance abuse.

{¶ 3} On June 21, 2022, the court granted temporary custody of the child to the agency, the child was adjudicated to be dependent, and a case plan was developed toward reunification.

{¶ 4} A semiannual review ("SAR") filed July 25, 2022, noted that Father was incarcerated and had not engaged in visitation services. The SAR also noted that the agency had ongoing concerns regarding Father's drug use, that Father was currently using drugs, and that Father had pending drug-related charges.

{¶ 5} On August 1, 2022, the court appointed a guardian ad litem ("GAL") for the child.

{¶ 6} On September 14, 2022, the agency filed an amended complaint.

---

[1] The record reflects that the initial complaint was dismissed for failure to reach a resolution within the required statutory timeframe.

**{¶ 7}** A December 29, 2022 SAR noted that on December 6, 2022, Father was sentenced to five years in prison. Subsequently, the record reflects that Father engaged in and largely completed case-plan services while incarcerated.

**{¶ 8}** On April 12, 2023, the agency filed a motion for first extension of temporary custody and request for specific findings. On May 1, 2023, the magistrate granted the agency's motion for a first extension of temporary custody. In a corresponding journal entry, the court found that the agency "has made reasonable efforts and continues to make reasonable efforts to make it possible for the child to safely return home through the provision of supportive services" and further that the agency "has made reasonable efforts to finalize the permanency plan for the child." On May 17, 2023, the court adopted the May 1, 2023 magistrate's decision.

**{¶ 9}** On August 22, 2023, the agency filed a motion for a second extension of temporary custody and request for specific findings. The magistrate granted the agency's motion on September 20, 2023, and made reasonable-efforts findings. On October 6, 2023, the court adopted the magistrate's decision.

**{¶ 10}** On February 26, 2024, the agency filed a motion to modify temporary custody to permanent custody.

**{¶ 11}** On April 17, 2025, the court held a trial on the agency's motion for permanent custody.

**{¶ 12}** CCDCFS caseworker Leonid Tselentchook ("Tselentchook") testified that he became involved with the case in July 2024, and that in this case, C.H. had been in agency custody since April 2022. He testified that the child had previously

been in agency custody in a separate case, but Mother and Father had regained custody of C.H. in that case.

{¶ 13} Tselentchook testified that he supervised visits with C.H. and Father at Father's correctional facility, and he described Father and C.H.'s interactions as "very good." (Tr. 36.) He also testified that while incarcerated, Father completed his case-plan services, related to parenting and substance abuse.

{¶ 14} Father testified that he had been incarcerated since April 2022 related to his convictions for drug possession and drug trafficking. He testified that his earliest anticipated release date was late November 2025, at which point he would be able to serve the last six months of his sentence in transitional control or a halfway house. Father also testified that he has been sober since April 2022. Father testified as to the programs he had completed while incarcerated, as well as to the services that would potentially be available to assist him with his reentry transition. Father's counsel introduced a letter confirming that his employment at the time of trial would continue upon his release.

{¶ 15} The child's GAL testified that C.H. had behavioral problems in his foster placement and at school. She testified that while she recognized that the court might be limited by statutory guidelines regarding extending temporary custody, she did not believe it was in C.H.'s best interests to terminate Mother and Father's parental rights.

{¶ 16} On April 22, 2025, Father filed a bench brief to supplement his arguments from the April 17 hearing. On April 25, 2025, Mother filed a response in

support of Father's bench brief.  On April 28, 2025, the agency filed a bench brief to supplement its arguments from the April 17, 2025 hearing.

{¶ 17}  On May 9, 2025, the court granted the agency's motion for permanent custody.  In a corresponding journal entry, the court made the following findings, in relevant part:

> Pursuant to O.R.C. 2151.414(B)(1):
>
> (d) The child has been in temporary custody of a public children services agency or private child placing agency for twelve or more months of a consecutive twenty-two-month period.
>
> With respect to the best interest of the child, the Court has considered the following factors under O.R.C. 2151.414(D)(1):
>
> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, and foster caregivers and out-of-home providers, and any other person who may significantly affect the child.
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child.
>
> (c) The custodial history of the child, including whether the child has been in temporary custody of a public children services agency or private child placing agency under one or more separate orders of disposition for twelve or more months of a consecutive twenty-two-month period.
>
> (d) The child's need for a legally secure placement and whether that type of placement can be achieved without a grant of permanent custody.
>
> (e) Whether any factors in divisions (E)(7) to (11) of this section apply in relation to the parents and the child.
>
> With respect to the best interest of the child, the Court finds that pursuant to O.R.C. 2151.414(D)(2), that all of the following apply:

(a) The Court determines by clear and convincing evidence that one or more of the factors in division (E) of this section exist and the child cannot be placed with one of the child's parents within a reasonable time or should not be placed within a reasonable time or should not be placed with either parent.

(b) The child has been in the agency's custody for two years or longer and no longer qualifies for temporary custody pursuant to division (D) of section 2151.415 of the Ohio Revised Code.

(c) The child does not meet the requirements for a planned permanent living arrangement pursuant to division (A)(5) of Section 2151.353 of the Ohio Revised Code.

(d) Prior to the dispositional hearing, no relative or interested person has filed, or has been identified in, a motion for legal Custody.

As all of these sections apply, permanent custody is in the best interest of the child, and this Court as required by this statute, shall commit the child to the permanent custody of CCDCFS.

{¶ 18} The court went on to find:

Pursuant to O.R.C. 2151.414(E): The Court finds that the child cannot be placed with one of the child's parents within a reasonable time of should not be placed with either parent.

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. *Applies to Mother*.

(2) The chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year. *Mother has chemical dependency*.

(16) Any other factor the Court finds relevant: *Father is currently incarcerated and has been since 2022. Father and Mother remain married to each other. Father has remained sober and is maintaining*

*a job since February 6, 2025 while incarcerated and maintained as strong bond as possible with child. However, father shall continue to be incarcerated or in related step down facility or halfway house through rest of 2025.*

{¶ 19} On June 2, 2025, Father and Mother filed separate notices of appeal.[2]

{¶ 20} Father raises a single assignment of error for our review:

The trial court abused its discretion by granting permanent custody of Appellant's [child] to CCDCFS against the manifest weight of the evidence.

## II. Law and Analysis

{¶ 21} A parent has a fundamental interest in the care and custody of their child. *In re L.W.*, 2019-Ohio-1343, ¶ 20 (8th Dist.). However, parental rights are not absolute: "'The natural rights of a parent are always subject to the ultimate welfare of the child, which is the polestar or controlling principle to be observed.'" *In re L.D.*, 2017-Ohio-1037, ¶ 29 (8th Dist.), quoting *In re Cunnigham*, 59 Ohio St.2d 100, 106 (1979). When deciding to terminate an individual's parental rights to their children, the goal "'is to make a more stable life for the dependent children and to facilitate adoption to foster permanency for children.'" *In re U.B.*, 2025-Ohio-1265, ¶ 22 (8th Dist.), quoting *In re N.B.*, 2015-Ohio-314, ¶ 67 (8th Dist.). The main focus of any child-custody decision must be what is in the best interests of the child. *See Venable v. Venable*, 3 Ohio App.3d 421, 423 (8th Dist. 1981).

{¶ 22} R.C. 2151.414 sets out specific findings a juvenile court must make before granting an agency's motion for permanent custody of a child. To grant

---

[2] This appeal is a companion case to Mother's appeal, *In re C.H., Jr.*, 8th Dist. Cuyahoga No. 115194.

permanent custody, the juvenile court is required to engage in a two-prong approach. The juvenile court must find clear and convincing evidence that (1) one or more of the conditions set forth in R.C. 2151.414(B)(1)(a)-(e) exist, and (2) a grant of permanent custody is in the child's best interest. R.C. 2151.414(D)(1) and (2).

{¶ 23} Clear and convincing evidence has been defined as "'that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *In re K.H.*, 2008-Ohio-4825, ¶ 42, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954). "'We will not reverse a juvenile court's termination of parental rights and award of permanent custody to an agency unless the judgment is not supported by clear and convincing evidence.'" *In re U.B.* at ¶ 23, quoting *In re L.A.*, 2024-Ohio-5103, ¶ 17 (8th Dist.).

{¶ 24} The Ohio Supreme Court has held that

> the proper appellate standards of review to apply in cases involving a juvenile court's decision under R.C. 2151.414 to award permanent custody of a child and to terminate parental rights are the sufficiency-of-the-evidence and/or manifest-weight-of-the-evidence standards, as appropriate depending on the nature of the arguments that are presented by the parties.

*In re Z.C.*, 2023-Ohio-4703, ¶ 18. Here, Father presents a single assignment of error alleging that the award of permanent custody was error because it was against the manifest weight of the evidence.

{¶ 25} In reviewing a juvenile court's decision regarding permanent custody on manifest-weight-of-the-evidence grounds,

> the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. [*Eastley v. Volkman*, 2012-Ohio-2179,] ¶ 20. "In weight the evidence, the court of appeals must always be mindful of the presumption in favor of the trier of fact." *Id.* at ¶ 21. "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). "'If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.'" *Id.* at fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 604, at 191-192 (1978).

*In re Z.C.* at ¶ 14.

## A. R.C. 2151.414(B)(1)(a)-(e) Findings

{¶ 26} In the instant case, the trial court made a finding pursuant to R.C. 2151.414(B)(1)(d), that the child had been in agency custody "for twelve or more months in a consecutive twenty-two month period." Father does not dispute this finding.

## B. R.C. 2151.414(D) — Best Interests of the Child

{¶ 27} Once the juvenile court found that one of the enumerated R.C. 2151.414(B)(1) factors applied, the court moved on to the second prong of the two-prong test and conducted an analysis of the child's best interests. The juvenile court

had to find by clear and convincing evidence that it was in C.H.'s best interests to grant permanent custody to the agency. *In re L.W.*, 2019-Ohio-1343, ¶ 36 (8th Dist.); R.C. 2151.414(D). The focus of a best interest determination is the child, not the parent. *In re R.G.*, 2016-Ohio-7897, ¶ 28 (8th Dist.), citing *In re N.B.*, 2015-Ohio-314, ¶ 59 (8th Dist.); *In re Awkal*, 95 Ohio App.3d 309, 315 (8th Dist. 1994).

{¶ 28} Pursuant to R.C. 2151.414(D)(2), if all of the following apply, then

> [p]ermanent custody is in the best interest of the child, and the court *shall* commit the child to the permanent custody of a public children services agency or private child placing agency:
>
> (a) The court determines by clear and convincing evidence that one or more of the factors in division (E) of this section exist and the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent.
>
> (b) The child has been in the agency's custody for two years or longer, and no longer qualifies for temporary custody pursuant to division (D) of section 2151.415 of the Ohio Revised Code.
>
> (c) The child does not meet the requirements for a planned permanent living arrangement pursuant to division (A)(5) of Section 2151.353 of the Ohio Revised Code.
>
> (d) Prior to the dispositional hearing, no relative or other interested person has filed, or has been identified in, a motion for legal custody.

(Emphasis added.)

{¶ 29} The juvenile court in this case found that all of the R.C. 2151.414(D)(2) factors applied and that it was therefore statutorily required to commit C.H. to the agency's permanent custody.

{¶ 30} With respect to the factors in division (E), the court found that three of the factors applied, though only one — R.C. 2151.414(E)(16) — applied to Father.

Specifically, the court found that the (E)(1) factor, regarding the parent's continuous and repeated failure to substantially remedy the conditions causing the child to be placed outside of the home, applies to Mother. The court also found that the (E)(2) factor, regarding chronic chemical dependency, applies to Mother. With respect to Father, the court found that (E)(16), referring to "any other factor the Court finds relevant[,]" applied to Father, and noted that Father was currently incarcerated and had been since 2022. The court further found that Father and Mother remain married to each other, and while Father has remained sober and is maintaining a job and as strong a bond as possible with the child, Father would continue to be incarcerated or in a related stepdown facility or halfway house through 2025.

{¶ 31} According to Father, the juvenile court erred in using (E)(16), the "catchall" provision, to deprive Father of his parental rights. While Father acknowledges that the court was only required to find that one of the (E) factors applied, he argues that it was improper for the court to do so here using the catchall provision. He further argues that this is especially true when the statutory factor that contemplates an incarcerated parent, (E)(12), did not apply to Father.[3] Father does not cite any controlling case law supporting his assertion, and we decline to adopt his reasoning here.

---

[3] The R.C. 2151.414(E)(12) factor states: "The parent is incarcerated at the time of the filing of the motion for permanent custody or the dispositional hearing of the child and will not be available to care for the child for at least eighteen months after the filing of the motion for permanent custody or the dispositional hearing."

**{¶ 32}** The statute clearly empowers juvenile courts to "consider any other factors the court deems relevant." R.C. 2151.414(E)(16). Further, we note that, in this case, the juvenile court not only cited R.C. 2151.414(E)(16) with respect to Father, but also explained its finding thereunder with specificity. Additionally, the juvenile court found that Mother and Father remained married and Father's own testimony indicated that he intended to live with Mother again upon his release. While this intention is not inherently problematic, this intention, in the context of ample evidence in the record that Mother is still abusing methamphetamines and has herself failed to remedy the conditions causing the child's removal, is noteworthy.

**{¶ 33}** Moreover, while we acknowledge the progress that Father has made on his case-plan goals while incarcerated, we also note that "'the successful completion of case-plan requirements does not preclude a grant of permanent custody to a social services agency.'" *In re T.B.*, 2025-Ohio-2075, ¶ 56 (8th Dist.), quoting *In re C.C.*, 2010-Ohio-780, ¶ 25 (8th Dist.). This is because a case plan is "'a means to a goal, but not the goal itself.'" *Id.* The Ohio Supreme Court has noted that "[i]f the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment." *In re Z.C.*, 2023-Ohio-4703, ¶ 14, citing *Seasons Coal Co., Inc.*, 10 Ohio St.3d at 80, fn. 3. While Father has undoubtedly made significant progress, this does not change the juvenile court's statutory obligations.

{¶ 34} Because we find that factor (16) under R.C. 2151.414(E) was met with respect to Father, we also find that the evidence in the record supports the juvenile court's finding that the child cannot or should not be returned to the parents. Likewise, we find that the juvenile court's determinations under R.C. 2151.414(D)(2) are supported by the record. Because all of the factors under R.C. 2151.414(D)(2) apply, permanent custody is in the best interests of the child and the juvenile court was required to grant permanent custody to the agency. *In re P.J.*, 2021-Ohio-1821, ¶ 26 (8th Dist.). Further, because we find that the R.C. 2151.414(D)(2) best-interests factors are supported by the record, there is no need to address the R.C. 2151.414(D)(1) best-interests factors. *In re Z.L.*, 2025-Ohio-4851, ¶ 60, citing *In re A.S.*, 2021-Ohio-3829, ¶ 42 (8th Dist.)

{¶ 35} The juvenile court considered the relevant statutory factors in granting permanent custody, and its findings were supported by competent, credible evidence. Therefore, we cannot say that the grant of permanent custody was against the manifest weight of the evidence. Father's sole assignment of error is overruled.

{¶ 36} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27

of the Rules of Appellate Procedure.

_____
WILLIAM A. KLATT, JUDGE*

EILEEN T. GALLAGHER, P.J., and
MARY J. BOYLE, J., CONCUR

(*Sitting by assignment: William A. Klatt, J., retired, of the Tenth District Court of
Appeals.)